UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARDO MOSS,

           Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

           Defendants.

_____/

Case No. 1:09-cv-499

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion for summary judgment (docket no. 37).

### I.    Plaintiff's complaint

Plaintiff has named the following defendants in his complaint: the Michigan Department of Corrections (MDOC), Resident Unit Officer (RUO) Christopher King, RUO Daniel Hair[1] and RUO Jack Gardner. Plaintiff's claims arise from an incident that occurred on July 19, 2007, when he was in the process of being transferred from the Baraga Maximum Correctional Facility (AMF) to the Ionia Maximum Correctional Facility (ICF). Compl. at ¶ 13.

Plaintiff sets forth the following allegations. When he arrived at ICF, plaintiff was strip searched, bound with belly chains, ankle cuffs and wrist cuffs, and escorted by defendants to his cell. *Id.* at ¶ 14. After plaintiff entered the cell, defendants shut the cell door and ordered him

---

[1] RUO Hair is identified in plaintiff's complaint as defendant "Nair." The court notes that plaintiff has not amended his complaint to correctly identify RUO Hair as a defendant in this action.

to put his hands in a slot of the cell door. *Id.* at ¶ 15. When plaintiff complied, RUO Hair removed his ankle cuffs and RUO King began to remove his wrist cuffs. *Id.* at ¶ 16. After plaintiff's left arm was released from the wrist cuff, defendants forcefully grabbed his right arm (which was still cuffed), "yanked" his arm and shoulder through the slot of the cell door, cussed at him and "called him derogatory names." *Id.* at ¶¶ 17 and 20. Plaintiff alleged that his arm was pulled with such force "that his arm was pulled out of the socket and fractured." *Id.* at ¶ 18. In addition, plaintiff's arm and wrist sustained injuries due to the tightness of the cuffs. *Id.* at ¶ 19. Despite plaintiff's severely injured arm and requests for medical attention, plaintiff was never seen by any medical personnel. *Id.* at ¶ 22. After this incident defendants threw plaintiff's food and trays on the floor. *Id.* at ¶ 24. Defendants were subsequently disciplined for their actions. *Id.* at ¶ 25.

Plaintiff filed a five count complaint alleging as follows: Count I (Assault and Battery); Count II (Violation of the Eighth Amendment -- 42 U.S.C. § 1983 Excessive Force); Count III (Violation of the Eighth Amendment -- 42 U.S.C. § 1983 Deliberate Indifference to Medical Needs); Count IV (Violation of the Eighth Amendment -- 42 U.S.C. § 1983 Conditions of Confinement); and Count V (Gross Negligence). Plaintiff seeks damages in excess of $75,000.00, costs and attorney fees.

The court dismissed defendant MDOC pursuant to a stipulation entered on August 13, 2010. *See* Stipulation and Order (docket no. 16). This matter is now before the court on a motion for summary judgment filed by the remaining defendants, RUO Hair, RUO King and RUO Gardner.

## II.  Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984);  *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.   Plaintiff also seeks relief under state law for assault and battery and gross negligence.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment.  The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.    Discussion

### A.    Issues raised in defendants' motion for summary judgment

Defendants' motion for summary judgment and supporting brief seek relief on only four grounds. First, that RUO Gardner was not present on July 19, 2007, when the use of excessive force occurred as alleged in Count II. Second, that defendants are entitled to qualified immunity with respect to the claim of excessive force. Third, that defendants were not deliberately indifferent to plaintiff's serious medical needs as alleged in Count III. Fourth, that defendants are entitled to summary judgment as to plaintiff's remaining claims as alleged in Counts I, IV and V.

### B.    RUO Gardner's involvement in the July 19, 2007 incident

RUO Gardner testified that he was not present during the alleged use of excessive force that occurred on July 19, 2007. Gardner Dep. at pp. 11-12 (docket no. 38-5). At his deposition, plaintiff admitted that Gardner was not present at that time. Moss Dep. at pp. 103-07 (docket no. 38-2). Rather, plaintiff testified that his claim against RUO Gardner involved an assault with a food tray and spitting in plaintiff's food. Specifically, plaintiff testified that 72 hours after the July 19th incident, "Gardner threw a tray of waffles and sausage at me," hitting plaintiff in the chest; that plaintiff requested medical treatment but received none; that plaintiff considered Gardner's actions an assault; and that Gardner spit in his food on multiple occasions. *Id.*

**C.**     **RUO Hair and RUO King's qualified immunity defense as to the alleged use of excessive force**

RUO Hair and RUO King raise the defense of qualified immunity with respect to the excessive force claim in Count II.  Qualified immunity from civil actions for damages is not a mere defense to liability, but rather immunity from suit and an entitlement not to stand trial, which should be determined at the earliest possible stage in litigation.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Consequently, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"A defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established."  *Morrison v. Board Of Trustees Of Green Township*, 583 F.3d 394, 400 (6th Cir. 2009).  Courts can exercise their sound discretion "in deciding which of the two prongs of the qualified immunity analysis should be exercised first in light of the circumstances of the particular case at hand."  *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009), quoting *Pearson v. Callahan*, -- U.S. --, 129 C. Ct. 808, 818 (2009).

Here, plaintiff alleged that RUO Hair and RUO King used excessive force against him in violation of the Eighth Amendment.  The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth

Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In analyzing plaintiff's claims, the court must examine whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 6. Courts evaluate the injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. at 7, quoting *Whitley*, 475 U.S. at 321.

Courts must give deference to actions prison guards take to maintain prison discipline, as long as those actions are taken pursuant to a considered choice and not in bad faith or for no legitimate purpose. *Whitley*, 475 U.S. at 321-22. "[Not every] malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Where the use of some force is required to restore order, it does not violate the Eighth Amendment unless the force used is "repugnant to the conscience of mankind" or the force is used "maliciously and sadistically for the very purpose of causing harm." *Id.* at 9,10 (citations omitted). While an Eighth Amendment claim need not include a "significant injury," a *de minimis* use of physical force will not support such a claim unless the force used is "of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10.

Plaintiff has set forth the following facts in support of his excessive force claim. Upon his arrival at ICF, plaintiff was shackled with wrist chains, ankle chains and belly chains, and underwent a strip search. Moss Dep. at pp. 36-7 (Exh. A attached to plaintiff's brief) (docket no. 45-2). The escorts, identified as defendants Hair, King and "a black guy," were joking and trying to get plaintiff to laugh. *Id.* at pp. 37-38. They also made a statement that "[w]ell, you're not to be

a problem [sic]." *Id.* at p. 37.[2] During the escort, plaintiff's hands were chained behind his back. *Id.* at p. 84.

When plaintiff and the escorting officers reached the cell, plaintiff was told to go into the cell, which he did. *Id.* at p. 87. Plaintiff was placed in the cell with his ankle and belly chains on and his hands cuffed behind his back. *Id.* None of the three defendants went in the cell. *Id.*[3] After the cell door was shut by someone in the Control Center, the officers told plaintiff to back up to the door, put his hands in the slot and bend over. *Id.* at pp. 87-90. Plaintiff complied with the order. *Id.* at pp. 88-89. He did not "give them any lip" or struggle. *Id.* Plaintiff described the door slot as 4 or 6 inches wide and about 14 to 16 inches long. *Id.* at p. 89. Plaintiff's back was against the door. *Id.* at p. 90. He bent slightly forward and placed his hands in the slot, with about "5 inches" of his "hand and/or arm" through the slot. *Id.* at pp. 91-92.

At this time, either Hair or King used a key to open the right handcuff. *Id.* at p. 92. Plaintiff brought his right hand through the slot and placed it on his right side, which was inside of the cell. *Id.* Then, someone yelled "Mother f*****" and used the chain to "snatch" his right arm and shoulder through the slot. *Id.* at p. 93. One of the escorts continued to pull plaintiff's right arm with the chain while the other was "beating it" with his fist. *Id.* at pp. 94-5. Plaintiff stated that the officers beat his right arm between the wrist and elbow "around six times," called him an "MF" every time they punched, and yanked and pulled on his arm. *Id.* at pp. 95-6. The incident continued

[2] In his statement of facts, plaintiff states that he told the corrections officers that "he did not want any trouble and he was ready to go home," and that while defendants "were clearly attempting to incite [p]laintiff to inappropriately react to them," plaintiff "did not fall for their trickery." Plaintiff's Brief at p.2. However, none of these statements are supported by plaintiff's deposition testimony (referenced in the brief as appearing at page 37 of plaintiff's deposition).

[3] The court notes that one of the three defendants, RUO Gardner, was not present. Presumably, plaintiff meant to say that none of his three escorts entered the cell.

for about three minutes, as plaintiff begged and pleaded with them to stop. *Id.* at p. 96. When the officers were done with the assault, they made plaintiff back up to the door, unshackled him and slammed the slot shut. *Id.* at p. 97.

Plaintiff banged on the door, stating "I want to see a nurse" and "I want medical attention," to which defendants allegedly responded, "Yeah, whatever." *Id.* at pp. 97-8. Plaintiff asked for medical attention four times. *Id.* at p. 98. A nurse came six hours later. *Id.* at pp. 98-99. Plaintiff stated that he was bleeding in the arm area, elbow area and in his back shoulder area, that he had "three different gashes" and that his arm "was swollen the size of a grapefruit." *Id.* at p. 99. Neither a nurse nor a corrections officer ever asked plaintiff if he wanted an x-ray. *Id.*

Defendant King testified as follows. Plaintiff's wrists were brought through the food slot "[b]ecause he attempted to pull in and turn in an aggressive fast manner." King Dep. at p. 32 (Exh. B attached to plaintiff's brief) (docket no. 45-3). King testified that plaintiff was trying to pull the chains while Officer Hair had his arms through the slot to remove the cuffs. *Id.* at p. 37. King also stated that the officers yanked or tug on the chain because plaintiff was resisting, pulling away, struggling and not complying with orders. *Id.* at pp. 41-2. During the struggle, plaintiff failed to obey the officers' direct orders to return his left hand behind his back. *Id.* at p. 42.

Another prisoner, Demetrius Givens, testified as follows. He was housed "in the same general area" as plaintiff. Givens Dep. at p. 9 (Exh. E attached to plaintiff's brief) (docket no. 46-1). Givens did not see anything happen. *Id.* at p. 15. However, Givens heard plaintiff "ask them to quit pushing him," heard the officers say "the M-F word" and "quit resisting," followed by "a bunch of banging and slapping and him hollering." *Id.* at p. 18. Givens also heard plaintiff "request medical attention." *Id.* at p. 26.

MDOC medical records reflect that at 6:32 p.m. on July 19, 2007, plaintiff reported to RN Habtemariam that his right forearm was injured when officers were taking the restraints off, stated that his forearm was fractured and hurting. *See* Medical Records (Defendants' Exh. E) (docket no. 39-1). RN Habtemariam made the following observations: "Plaintiff moves extremity. A small horizontal scratch on right forearm. C/O pain." *Id.* Plaintiff was provided with an Ace wrap and Tylenol, and instructed to apply a warm compress to the area. *Id.* In his affidavit, RN Habtemariam noted that "[w]ithout question, if his right forearm had swelled up 'to the size of a grapefruit' as alleged by Plaintiff in his deposition, my health care documentation of the Plaintiff at that time would have reflected such an observation." Habtemariam Aff. at ¶ 3 (Exh. F attached to defendants' brief) (docket no. 41).

An x-ray of the forearm was scheduled for approximately July 26, 2007. Medical Records (docket no. 39-1). However, MDOC medical records reflects that plaintiff refused to come out for the scheduled x-rays. *Id.* In her affidavit, Radiology Technician Staci L. Dailey stated that plaintiff's records reflect that no x-ray was taken because he refused to leave his cell. Dailey Aff. at ¶ 2 (Exh. G attached to defendants' brief) (docket no. 42).

Plaintiff submitted medical records from long after the incident, presumably to demonstrate medical problems with his shoulder. Medical records from Havenwyck Hospital indicate that plaintiff was admitted on May 23, 2008, as paranoid and delusional, believing that he was coughing up parasites and that someone was trying to poison his food. Havenwyck Hospital records (Exh. K attached to plaintiff's brief) (docket no. 47-2). Staff noted that plaintiff had a history of assaultive behavior. *Id.* As part of his medical history, plaintiff reported right shoulder pain. *Id.* Plaintiff was discharged with a diagnosis of psychotic disorder, with a complaint of chronic

pain. *Id.* Plaintiff also submitted medical records from Susan Devine, N.P., who examined plaintiff on November 11, 2009 (approximately 2 1/2 years after the incident), and found shoulder abnormalities, muscle spasms of the shoulders, abnormal motion of the shoulders and pain elicited by motion of the shoulder. N.P. Devine records (Exh. L attached to plaintiff's brief) (docket no. 47-3).

RUO Hair and RUO King contend that plaintiff's excessive force claim fails because they acted reasonably to control plaintiff "when he assaulted staff or otherwise resisted legitimate restraint procedures" and that plaintiff did not suffer any more than *de minimis* injuries. Defendants' Brief at p. 6. While defendants have attached over 150 pages of exhibits to their brief, they cite few facts in support their position. RUO Hair and RUO King rely on plaintiff's medical records and the affidavits of RN Habtemariam and Radiology Technician Dailey to demonstrate the *de minimis* nature of plaintiff's injuries. These two defendants also cite plaintiff's deposition testimony to establish that: no physician has ever diagnosed a problem with plaintiff's right upper extremity; plaintiff has never had an x-ray taken of that extremity; and plaintiff has no evidence to demonstrate any injury to the extremity arising from the July 19th incident. Defendant's Brief at p. 3, citing Moss Dep. at pp. 52-62.

Viewing the evidence in the light most favorable to plaintiff, the court concludes that the actions of RUO Hair and RUO King did not rise to the level of a constitutional violation for excessive use of force. The court adopts plaintiff's testimony that there was no reason for defendants to exert force, because he was complying with orders and not struggling. However, neither the force used nor the extent of the injury inflicted rise to the level of a constitutional violation. Plaintiff's version of events, such as the existence of three gashes on his body and an arm

swollen to the size of a grapefruit are "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott*, 550 U.S. at 380. The medical record reflects that plaintiff suffered only minor injuries. For that reason, the court should not adopt plaintiff's version of the facts for purposes of ruling on this motion for summary judgment. *Id.*[4] In addition, plaintiff's refusal to submit to the scheduled x-ray underscores the *de minimis* nature of his injuries. Such conduct is clearly inconsistent of a person alleging to have had his "arm pulled out of the socket and fractured." Compl. at ¶ 18. Assuming that RUO Hair and RUO King yanked and beat plaintiff's arm, the quantum of force applied here, which resulted in a small scratch to plaintiff's forearm and the issuance of an ACE bandage, is not "repugnant to the conscience of mankind." *See Hudson*, 503 U.S. at 10.

Accordingly, RUO Hair and RUO King are entitled to summary judgment on the claim of excessive force as alleged in Count II.

### D.     Deliberate indifference to serious medical needs (Count III)

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim for deliberate indifference consists of an objective and a subjective component. *Farmer*, 511 U.S. at 834. The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the

---

[4]While plaintiff claims that prison staff "lied and covered up" his injuries, and that the prison medical records were "a setup" and "a lie," he provided no explanation for these claims. It is the court's conclusion that no reasonable jury would believe plaintiff's bare assertion that two prison health care providers, who are not parties to this litigation, prepared false, contemporaneous medical records.

penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley*, 475 U.S. at 319.

### 1. RUO Hair and RUO King

Plaintiff alleged that RUO Hair and RUO King were deliberately indifferent to his serious medical needs by failing to call a nurse after he was secured in the cell. As previously discussed, plaintiff suffered only *de minimis* injuries and was treated by a nurse within six hours of the incident. Plaintiff later refused to have an x-ray of his arm. The medical records reflect that plaintiff did not have a serious medical need. *See Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) (minor cuts and bruises from an altercation do not support an Eighth Amendment claim). Plaintiff's allegation that defendants were deliberately indifferent to his serious medical needs is

"blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott*, 550 U.S. at 380. For that reason, the court should not adopt plaintiff's version of the facts for purposes of ruling on this motion for summary judgment. *Id.* Accordingly, RUO Hair and RUO King are entitled to summary judgment on the claim of deliberate indifference to medical needs as alleged in Count III.

### 2. RUO Gardner

Plaintiff alleged that he did not receive medical attention after RUO Gardner assaulted him with a food tray. However, plaintiff has presented no evidence that the alleged assault with the food tray resulted in a serious medical condition. Plaintiff merely testified that a food tray hit him in the arm and chest and spattered food. Moss Dep. at pp. 103-07. Plaintiff could not identify any medical need arising from this incident, let alone a "serious" medical need requiring treatment. *Id.* Viewing the facts in the light most favorable to plaintiff, the court concludes that plaintiff has failed to demonstrate that RUO Gardner was deliberate indifference to a serious medical need in violation of the Eighth Amendment. Accordingly, RUO Gardner is entitled to summary judgment on the claim of deliberate indifference to medical needs as alleged in Count III.

### E. Plaintiff's remaining claims

### 1. Assault and battery

In Count I, plaintiff alleged that defendants committed an assault and battery against him in violation of state law.

> To recover civil damages for assault, plaintiff must show an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich.App. 110, 119, 472 N.W.2d 16 (1991), citing *Tinkler v. Richter*, 295 Mich. 396, 401, 295 N.W. 201 (1940), and

13

> Prosser, Prosser & Keeton, Torts (5th ed.), § 9, p. 39. To recover for battery, plaintiff must demonstrate a "wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Thomas*, *supra* at 119, 472 N.W.2d 16 citing *Tinkler*, *supra*, and *Prosser*, *supra*.

*VanVorous v. Burmeister*, 262 Mich. App. 467, 482-483, 687 N.W.2d 132 (2004). Plaintiff has testified that defendants RUO Hair and RUO King assaulted him on July 19, 2007, by pulling on the chains and punching him. In addition, plaintiff testified that 72 hours later, RUO Gardner threw a food tray at him. Viewing the facts in the light most favorable to plaintiff, and in the absence of any argument or authority submitted by defendants, the court concludes that genuine issues of material fact exist with respect to plaintiff's claim for common law assault and battery against each defendant. Accordingly, defendants' motion for summary judgment for assault and battery as alleged in Count I should be denied.

### 2. Cruel and unusual conditions of confinement

In Count IV, plaintiff alleged that his conditions of confinement violated the Eighth Amendment's proscription against cruel and unusual punishment. Plaintiff identified this claim as arising from RUO Gardner's actions of throwing plaintiff's food tray at him and spitting in his food. "The contemporary standards of civilized decency that currently prevail in society determine whether conditions of confinement are cruel and unusual." *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004), citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Extreme deprivations are required and only deprivations denying "the minimal civilized measure of life's necessities" are grave enough to create a violation of the Cruel and Unusual Punishment Clause. *Id.*, citing *Hudson*, 503 U.S. at 9, and quoting *Rhodes*, 452 U.S. at 347. The court does not consider throwing a food tray at a prisoner to be the type of "extreme deprivation" which violates the Eighth Amendment. However, spitting in a prisoner's food such as to make it inedible could rise to that level. *See, e.g.,*

*Eaddy v. Foltz,* No. 84-1419, 1985 WL 14065 at *2 (6th Cir. Dec. 18, 1985) (noting that contaminated food may constitute an Eighth Amendment violation under *Rhodes v. Chapman*); *Varricchio v. County of Nassau*, 702 F. Supp.2d 40, 56-57 (E.D. N.Y. 2010) (courts in the Second Circuit have recognized that depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment) (listing cases); *Beene v. Rasseki*, No. 3:10-0285, 2010 WL 2196597 at *7 (M.D. Tenn. May 27, 2010) ("[d]epriving an inmate of food, or serving him contaminated food, establishes grounds for a violation of the Eighth Amendment").  Here, plaintiff testified that "every day my tray had spit in it," and that after "[t]hey laughed and poked and made fun of me" plaintiff "would see food trays that had reproductive male fluid in the mac salad" and he "would get tuna fish salad that got sperm in it."  Moss Dep. at pp. 58 and 106.  As improbable as these allegations may be, viewing the facts in the light most favorable to plaintiff, and in the absence of any argument or authority to the contrary, the court concludes that genuine issues of material fact exist with respect to plaintiff's claim that RUO Gardner tampered with his food in violation of the Eighth Amendment.  Accordingly, RUO Gardner's motion for summary judgment with respect to cruel and unusual conditions of confinement as alleged in Count IV should be denied.

### 3.     Gross negligence

Finally, in Count V, plaintiff alleged that RUO Hair and RUO King were grossly negligent in violation of state law by yanking and punching on plaintiff's arm.  Plaintiff's Brief at p. 15.  Plaintiff does not identify any alleged gross negligence by RUO Gardner.  Under Michigan law, "gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  M.C.L. § 691.1407(7)(a).   A claim of gross negligence avoids governmental immunity provided by M.C.L. § 691.1407(2)(c), which provides that an

employee of a governmental agency is immune from tort liability, provided that the employee's conduct "does not amount to gross negligence that is the proximate cause of the injury or damage."

Plaintiff's claim for gross negligence against RUO Hair and RUO King, which arises from the alleged pulling and punching of his arm is without merit. Plaintiff's complaint and testimony clearly characterized the July 19, 2007 incident as one involving intentional acts to injure him which gave rise to claims of excessive force and assault and battery. Plaintiff cannot characterize these same intentional actions as gross negligence under state law. "Michigan 'has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence.'" *Miller v. Sanilac County*, 606 F.3d 240, 254 (6th Cir. 2010), quoting *VanVorous v. Burmeister*, 262 Mich. App. 467. 687 N.W.2d 132 (2004). *See also, Smith v. Stolberg*, 231 Mich. App. 256, 258-59, 586 N.W.2d 103 (1998) (where the plaintiff essentially alleged an intentional, offensive touching, the proper cause of action is for the intentional tort of battery, not negligence); *Sudul v. City of Hamtramck*, 221 Mich. App. 455, 458, 562 N.W.2d 478 (1997) ("[w]e specifically agree with the discussion in the dissent/concurrence regarding the nonexistence of a tort called 'assault and battery by gross negligence'"). Plaintiff's claim against RUO Hair and RUO King is one for an intentional tort rather than gross negligence. Accordingly, defendants' motion for summary judgment with respect to gross negligence as alleged in Count V should be granted.

### F.    Summary of claims remaining

Based upon the foregoing, plaintiff has the following claims remaining: Count I (assault and battery) against RUO Hair, RUO King and RUO Gardner; and Count IV (cruel and unusual conditions of confinement) against RUO Gardner.

## IV.     Recommendation

For the reasons set forth above, I respectfully recommend:

That defendants' motion for summary judgment as to the assault and battery claim under state law alleged in Count I be **DENIED**;

That defendants' motion for summary judgment as to the Eighth Amendment claim for excessive force alleged in Count II be **GRANTED**;

That defendants' motion for summary judgment as to the Eighth Amendment claim for deliberate indifference to a serious medical need alleged in Count III be **GRANTED**;

That defendants' motion for summary judgment as to the Eighth Amendment claim for cruel and unusual conditions of confinement alleged in Count IV be **DENIED**; and,

That defendants' motion for summary judgment as to gross negligence under state law alleged in Count V be **GRANTED**.


Dated:  February 3, 2011                          /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).